IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRANSCORE, L.P.** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 09-2789** |
| **v.** | : | |
| | : | |
| **MARK IV INDUSTRIES CORP.** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM**

GENE E.K. PRATTER, J.                                                    OCTOBER 15, 2009

## I.      INTRODUCTION

The parties to this suit compete in the vehicle toll and tracking business, but the present

feature of their dispute calls upon the Court's traffic control duties to unsnarl the litigation back-

up caused by their respective races to different courthouses along Interstate 95.

TransCore, L.P. ("TransCore") seeks a declaration of non-infringement regarding four

patents held by Mark IV Industries Corporation ("Mark IV").  In addition, TransCore hopes to

persuade the Court to preliminarily enjoin Mark IV from proceeding with a related, earlier-filed

action in the District of Delaware regarding three of the four patents at issue here.  Mark IV has

filed a cross-motion to dismiss this case for improper venue, or in the alternative, to transfer this

case to the District of Delaware.  The Court held a status conference and oral argument on these

motions.  For the following reasons, the Court denies TransCore's motion, and grants in part and

denies in part Mark IV's motion.  This case will be transferred to the District of Delaware for that

court's consideration of the coordination or consolidation of this case with the related, earlier-

filed action already pending there.

II.     STATEMENT OF RELEVANT FACTS

        The parties appear to be in agreement about all of the relevant facts concerning the

motions before the Court.

        TransCore and Mark IV are competitors in the vehicle toll and tracking business.

TransCore is a Delaware corporation with its principal place of business in Pennsylvania, and

Mark IV is a Canadian corporation with its principal place of business in Ontario, Canada.

        A.      The Settlement Agreement

        In 2001, TransCore and Mark IV settled two civil lawsuits and entered into a Settlement

Agreement, which sets forth a procedure for resolving any further disputes between them.  The

relevant language in the Settlement Agreement is set forth in Section 23, which states:

> The parties agree that before the commencement of any litigation arising from this
> Agreement or from any other dispute between the parties, the parties will first provide
> written notice to the other party, and use their best efforts to have the key executives of
> each party meet within thirty (30) days following notice to seek to resolve the dispute.  If
> they are unable to meet or reach an agreement, then the parties will use their best efforts
> to submit the dispute to Antonio Piazza, Esq. before commencing suit.  Only if Mr.
> Piazza declines to serve or is unable to resolve the dispute within thirty (30) days
> following notice will the parties commence litigation.

        B.      The May 20, 2009 Letter from Mark IV to TransCore

        On May 20, 2009, Mark IV's President sent a letter to TransCore's President.  In this

letter, Mark IV stated that it

> hereby gives notice to TransCore that TransCore's recent introduction of its Encompass 6
> IAG Plug n Play multi-protocol reader, e.g., as installed on The Southern Connector toll
> road in Greenville, SC (TransCore press release, March 31, 2009), infringes one or more
> of Mark IV's U.S. patents covering such technology.

This letter did not specify any patent or patent claims.  It did, however, invoke and restate the

terms of Section 23 regarding the procedure for resolving disputes.  It concluded, "[p]lease let me

know when the key executive(s) of TransCore are available to discuss this matter. I propose

having a telephone conference within the next week to try and resolve this matter."

C.      The May 21, 2009 Letter from TransCore to Mark IV

After receiving the May 20, 2009 letter from Mark IV, TransCore identified four patents

that it believed relate to the subject matter of the brewing dispute. On May 21, 2009, counsel for

TransCore sent a letter to Mark IV's President and counsel. TransCore's letter stated, in

pertinent part, "for TransCore to meaningfully respond to your letter and participate in the

dispute resolution provisions of Section 23 of the 2001 Settlement Agreement, please provide me

as soon as possible the identify [sic] of the Mark IV patents and the specific claims of each that

you allege TransCore is infringing."

D.      The May 29, 2009 Letter from Mark IV to TransCore

On May 29, 2009, Mark IV sent a letter to TransCore, stating in pertinent part:

With respect to your request regarding the Mark IV patents which are infringed by
TransCore, it is Mark IV's position that at least U.S. Patent Nos. 5,164,732; 5,196, 846;
and 6,219,613 are infringed by the manufacture, use, sale, or offer for sale by TransCore
of Encompass® 4, 5 or 6 Readers, Encompass® IAG PNP Reader System, eZGo
Anywhere™ Standard On-Board Units and all similar products.

Pursuant to Section 23, of the 2001 Mark IV-TransCore Settlement Agreement which
requires the parties to meet to seek to resolve the dispute, Mark IV management is
available on Friday, June 5, 2009 for a telephone conference with TransCore management
to try and resolve this dispute. I will contact you in the next few days to arrange our
meeting.

E.      The June 5, 2009 Telephone Conference

On June 5, 2009, representatives from both TransCore and Mark IV participated in a

telephone conference in an attempt to settle the dispute. Murray Decl. in Supp. of Mark IV

Cross-Mot. to Transfer at ¶ 5; Mark IV Mem. in Supp. of Cross-Mot. to Transfer and in Resp. to

Mot. to Enjoin at 2.[1]  A representative from TransCore stated that he had already approached Mr.

Piazza about mediating the dispute.  According to TransCore, Mr. Piazza's earliest availability

during the 30-day period was on June 12, 2009.  A representative from Mark IV indicated that

Mark IV was not available on June 12, but could be available on June 15 or 16.  Murray Decl. in

Supp. of Mark IV Cross-Mot. to Transfer at ¶ 5.  A representative from TransCore indicated that

he would communicate with Mr. Piazza's office to find out whether Mr. Piazza could be

available on any of those alternate dates.  Murray Decl. in Supp. of Mark IV's Cross-Mot. to

Transfer at ¶ 5; Mark IV Mem. in Supp. of Cross-Mot. to Transfer and in Resp. to Mot. to Enjoin

at 2.

> F.       The June 8, 2009 Email Exchanges Between TransCore and Mark IV

On June 8, 2009, at 10:47 a.m., TransCore's counsel emailed Mark IV, noting that he had

"contacted Mr. Piazza's office and the only date he is available before June 19th is the 12th."

The email confirmed that Mr. Piazza "would be able to start the call as early as 10am [sic] EST"

on June 12th.  The email further stated:

> Please let me know as soon as possible if this day and time will work for you all.  If so, I
> will let Mr. Piazza's office know so that they can set up the conference call.  If it doesn't
> work for you all, then we feel that both parties have used their best efforts to submit the
> dispute to Mr. Piazza within 30 days from May 20th, and have thus, met their obligations
> under Section 23 of the Settlement Agreement.

TransCore Mot. to Enjoin at Ex. D; Han Decl. in Supp. of Mark IV Cross-Mot. at ¶ 6, Ex. C.

Later that day, at 4:11 p.m., counsel for Mark IV sent an e-mail that stated, "[r]egrettably

---

[1]  TransCore did not provide any details about this telephone conference in its motion
papers and exhibits, so the conference is described as set forth in Mark IV's motion papers and
exhibits.  In its briefs and at the oral argument, TransCore did not dispute Mark IV's description
of this telephone conference.

we cannot make the 10 am call on June 12, and therefore, we agree, as you have stated, that the

parties have met their obligations under Section 23 of the Settlement Agreement." TransCore

Mot. to Enjoin at Ex. D; Han Decl. in Supp. of Mark IV Cross-Mot. to Transfer at ¶ 7, Ex. D.

At 4:25 p.m. that day, Mark IV filed an infringement action in the United States District

Court for the District of Delaware (the "Delaware Action"), regarding the three patents listed in

its May 29, 2009 letter to TransCore.[2]

G.      The Delaware Action

All three of the patents at issue in the Delaware Action relate to certain TransCore vehicle

toll and tracking technology products ("Accused Products"). The Delaware Action named

TransCore as well as seven other defendants. These seven other defendants were subsidiaries

and/or related entities of TransCore ("TransCore-related Entities").

As previously stated, TransCore is incorporated in Delaware and has its principal place of

business in Pennsylvania. All of the TransCore-related Entities are incorporated in the State of

Delaware but have principal places of business in various other states, including Georgia, Texas,

---

[2]   The next day, on June 9, 2009 (after Mark IV had filed the Delaware Action, but presumably before TransCore was aware of that filing), counsel for TransCore responded to Mark IV's email:

> We are disappointed to hear that Mark IV is not available to meet with TransCore and Mr. Piazza on June 12. Based on the June 5th telephone conference between the parties, Mark IV was going to decide if it would provide us with its claim charts indicating why it believes our products infringe its patents. It is my recollection that Mark IV was also going to consider and respond to the technical aspects of our products and the related non-infringement arguments we presented on the 5th. Will Mark IV be providing us this information and does it have an interest in having a follow-up call without Mr. Piazza before the 19th to continue settlement discussions? We remain wiling to meet with Mark IV in an attempt to resolve this matter.

TransCore Mot. to Enjoin at Ex. D.

California, Arizona, New Mexico, Florida, and Pennsylvania.  See Han Decl. in Supp. of Mark

IV Cross-Mot. to Transfer at ¶¶ 9-12 and Exhibits F-I, N (public records and website printout).[3]

>        H.      The Pennsylvania Action

On June 19, 2009 (11 days after the Mark IV filing in Delaware and 30 days after the first

communication concerning the dispute that arguably triggered the 30-day period under Section

23 of the Settlement Agreement),[4] TransCore brought the present action against Mark IV in this

Court ("the Pennsylvania Action").  In the Pennsylvania Action, TransCore seeks a declaratory

judgment of non-infringement and invalidity regarding four patents – the three patents asserted

by Mark IV in the Delaware Action, as well as a related patent not asserted in the Delaware

Action.

## III.   DISCUSSION

>        A.      The First-Filed Rule

>              1.      Application of the Rule

Mark IV requests that this case be transferred to the District of Delaware under 28 U.S.C.

§ 1404(a),[5] where a related action is already pending.  Although none of the parties discussed the

"first-filed" or "first-to-file" rule until the Court raised it at the oral argument on the competing

motions, the first-filed rule guides the Court's decision.

---

[3]  This assertion, originally made by Mark IV, has not been contested by TransCore.

[4]  Mark IV notes that on June 26, 2009, seven days after filing the Pennsylvania Action and the Motion to Enjoin, TransCore filed a motion in the District of Delaware to transfer the Delaware Action to Pennsylvania.

[5]  28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The "first-filed" rule "encourages sound judicial administration and promotes comity among federal courts of equal rank.  It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."  Equal Employment Opportunity Commission v. University of Pennsylvania, 850 F.2d 969 (3d Cir. 1988), aff'd on other grounds, 493 U.S. 182 (1990) (hereinafter "EEOC") (internal citations omitted).  See also Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) (internal quotations omitted).  "The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."  Id. at 930.  The first-filed rule applies here, and persuades the Court that the appropriate exercise of discretion is to transfer this case to the District of Delaware for potential coordination or consolidation with the related Delaware Action, as may be determined by the presiding judge in that court.  The issues and parties are sufficiently similar that transfer would serve the interest of conserving the courts' (and the parties') time and resources, and promote comity between the two judicial districts.

This case should be transferred even though it is not a mirror image of the Delaware Action, insofar as it ostensibly involves one more patent than the Delaware Action, and the Delaware Action involves additional TransCore-related Entities not formally involved in the current Pennsylvania action.  "The applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.  Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one."  Villari Brandes & Kline, P.C. v. Plaintifield Speciality Holdings II, Inc. No. 09-2552, 2009 U.S. Dist. LEXIS 54198, *18 (E.D. Pa. June 26, 2009).  Indeed, the

7

"substantive touchstone of the first-to-file inquiry is subject matter." Shire U.S., Inc. v. Johnson

Matthey, Inc. 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008) (finding that the first-filed rule is not

limited to mirror image cases where the parties and the issues perfectly align; rather, the rule

applies where the subject matter substantially overlaps). See also Colony Nat'l Ins. Co. v. UHS

Children Services, Inc., No. 09-2916, 2009 U.S. Dist. LEXIS 86528, **3-6 (E.D. Pa. Sept. 11,

2009); Butera, Beausang, Cohen & Brennan, P.C.  v. Ryan, No. 00-2509, 2000 U.S. Dist. LEXIS

17878, *6 (E.D. Pa. Dec. 11, 2000).  After carefully considering the complaints in both actions

and all of the parties' various submissions and statements on the issues, the Court determines that

the facts and circumstances in the two cases sufficiently align and arise from the same set of facts

and occurences to support being respectful of the rule in this instance.  See Elan Suisse Ltd. v.

Christ, No. 06-3901, 2006 U.S. Dist. LEXIS 93861, **14-17 (E.D. Pa. Dec. 29, 2006); Schiller-

Pfeiffer, Inc. v. Country Home Prods., No. 04-1444, 2004 U.S. Dist. LEXIS 24180, at *31 (E.D.

Pa. Dec. 1, 2004).[6]

> ### 2.     Exceptions to the First-Filed Rule

The Court of Appeals for the Third Circuit has recognized some limited exceptions to the

traditional first-to-file rule, which are discussed most particularly in EEOC.  In that case, the

Court of Appeals held that the first-to-file rule "is not a mandate directing wooden application of

the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or

forum shopping." EEOC, 850 F.2d at 972.  The Court of Appeals continued, "[b]ecause the first-

---

[6] The Court, not unlike the parties themselves, is satisfied that any claims regarding the additional patent in this case can also be addressed in the District of Delaware without burdening the Delaware case in either time or expense.  See Sept. 24, 2009 Oral Argument Transcript at 5-7.

filed rule is based on principles of comity and equity, it should not apply when at least one of the

filing party's motives is to circumvent local law and preempt an imminent [action in the local

forum]." Id. at 978. See also FMC Corp. v. AMVAC Chemical Corp., 379 F. Supp. 2d 733

(E.D. Pa. 2005) (denying defendant's motion to dismiss, stay or transfer where the second-filed

action involved inequitable conduct, bad faith, anticipatory filing, forum shopping and/or forum

avoidance).

Here, the exceptions that potentially could merit consideration are the forum shopping or

bad faith exceptions. For both, the main question is whether the first-filed action, i.e., the

Delaware Action, was filed by Mark IV in "apparent anticipation of imminent judicial

proceedings" by the opposing party. EEOC, 850 F.2d at 976 (internal quotations omitted).

TransCore asserts that Mark IV's filing of the Delaware Action was premature and that Mark IV

breached the Settlement Agreement "by violating the 30-day no-suit clause and by failure to 'use

their best efforts to submit the dispute to [Mr.] Piazza before commencing suit.'" TransCore

Mot. to Enjoin at 5. In essence, TransCore argues that Mark IV filed the Delaware Action in bad

faith and in "anticipation" of TransCore's "imminent" filing of the Pennsylvania Action. See

Sept. 24, 2009 Oral Argument Transcript at 29; TransCore Reply at 11 ("[i]t should not be

forgotten that Mark IV's early filing of its complaint in the District of Delaware, in breach of the

2001 Settlement Agreement between the parties, constituted precisely the type of manipulation of

the parties that should not be rewarded").

As frustrated as TransCore understandably may be, this argument is fundamentally flawed

because the Settlement Agreement did not require the parties to sit idly by and wait for the 30-

day clock to run out, given that it was apparent that their chosen mediator, Mr. Piazza, would not

be able to resolve the dispute and that further delay would be meaningless and unproductive.  On

the contrary, the Settlement Agreement provided that the parties were free to file suit if Mr.

Piazza was "unable to resolve the dispute within thirty (30) days following notice" - a condition

that appears to have been met by Mr. Piazza's stated unavailability.  See Sept. 24, 2009 Oral

Argument Transcript at 23-24.  Moreover, by the time Mark IV filed suit in Delaware, it had

already received an email from TransCore stating that TransCore agreed "that the parties *have*

*met their obligations* under Section 23 of the Settlement Agreement" (emphasis added).  There is

nothing to suggest that Mark IV engaged in forum shopping, bad faith or anything else that

would undermine application of the first-filed rule.  Under the circumstances presented, while

obviously speedy, Mark IV's decision to file suit does not present "rare or extraordinary

circumstances, inequitable conduct, bad faith, or forum shopping."  EEOC, 850 F.2d at 972.[7]

   B.   Transfer Under 28 U.S.C. § 1404(a)

Traditional 28 U.S.C. § 1404(a) analysis does not compel a different result.  Requests for

transfer under § 1404(a) may be granted when venue is proper in both the original and the

requested venue.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995); Schiller-

Pfeiffer, Inc., 2004 U.S. Dist. LEXIS 24180, at *28.  Under § 1404(a), district courts have broad

discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case

consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29

(1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see also Lony v. E.I. DuPont

---

   [7] This Court need not decide whether Mark IV's decision to file suit in Delaware actually
breached the Settlement Agreement.  It is sufficient to decide that, under the circumstances
presented, Mark IV's decision to file suit in Delaware does not suggest the kind of bad faith or
forum shopping that warrants a departure from the first-filed rule.

de Nemours & Co., 886 F.2d 628, 631-32 (3d Cir. 1989).  The moving party has the burden of

establishing that the proposed transfer is proper.  See Jumara, 55 F.3d at 879.

The Court of Appeals for the Third Circuit has delineated several factors for the district

court to consider when adjudicating a motion to transfer.  In Jumara, the Court of Appeals noted

that these factors include "private interests," such as (a) the plaintiff's forum preference as

manifested in the original choice, (b) the defendant's preference, (c) whether the claim arose

elsewhere, (d) the relative convenience of the parties as indicated by their relative physical and

financial conditions, (e) and the location of the witnesses, books and records (but only to the

extent that the witnesses, books or records may actually be unavailable for trial in one of the

fora).  Jumara, 55 F.3d at 879-80.  The "public interests" considerations include (a) the

enforceability of the judgment, (b) practical considerations that could make the trial easy,

expeditious or inexpensive, (c) the relative administrative difficulty in the two fora resulting from

court congestion, (d) and the local interest in deciding local controversies at home.  Id.  Some,

though not all, of these factors apply here.

The Court acknowledges the familiar maxim that in considering a transfer request, "a

plaintiff's choice of forum is entitled to great weight and is not to be disturbed unless the balance

of convenience strongly favors the defendants' forum."  Blanning v. Tisch, 378 F. Supp. 1058,

1060 (E.D. Pa. 1974) (citing Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970)).

However, the plaintiff's choice of forum is by no means dispositive, especially when a related

action is already pending in a different forum.  See Blanning, 378 F. Supp. at 1061 (the pendency

of a related case in the transferee forum is a powerful reason to grant a change of venue).

Indeed, "courts in our district have held that where there is a strong likelihood of

consolidation with a related action, a transfer of venue is warranted." <u>Villari Brandes & Kline,</u>
<u>P.C.</u>, 2009 U.S. Dist. LEXIS 54198 at *15 (citing, <u>e.g.</u>, <u>Prudential Ins. Co. of Am. v. Rodano</u>,
493 F. Supp. 954, 955 (E.D. Pa. 1980)).  "In fact, the presence of a related action in the transferee
forum is such a powerful reason to grant a transfer that courts do so even where other <u>Jumara</u>
factors, such as the convenience of parties and witnesses, would suggest the opposite." <u>Id.</u> at
**15-16 (collecting cases).  Accordingly, "the existence of a related action in another district is a
sound reason for favoring transfer when venue is proper there, even though the transfer conflicts
with the plaintiff's choice of forum." <u>Id.</u> at *16 (internal citations omitted).

Here, the parties agree that the Pennsylvania Action could have been brought in the
District of Delaware.  To the extent that the Pennsylvania Action includes an additional, related
patent that has not (yet) been asserted in the Delaware Action, TransCore concedes that any
claims related to the additional patent could be brought as counterclaims in the pending Delaware
Action, as the additional patent is integrally related to (and possibly inseparable from) the patents
in the Delaware Action.  <u>See</u> Fed. R. Civ. P. 13; Sept. 24, 2009 Oral Argument Transcript at 5-7.

TransCore argues that venue is more appropriate in Pennsylvania because TransCore
actually *sold* the Accused Products in Pennsylvania, whereas it only *offered* to sell them in
Delaware.  <u>See</u> TransCore Mot. to Enjoin at 8.  However, TransCore does not provide any
support for the notion that, when evaluating venue in a patent infringement action, the situs of an
actual sale of products necessarily trumps the situs of an offer to sell products.  The text of 35
U.S.C. § 271(a) defines patent infringement as including the making, using, selling or offering to
sell an accused product.  <u>See</u> 35 U.S.C. § 271(a).  Thus, the statute itself does not weigh actual
sales any more heavily than offers to sell, and, therefore, TransCore's argument on this basis

cannot carry the day.

With respect to the convenience of the witnesses, the Third Circuit Court of Appeals has held that a court should consider this interest "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Here, there has been no showing that witnesses are more likely to be unavailable in one forum than in another forum. Given the short distance between Philadelphia, Pennsylvania, and Wilmington, Delaware, it appears equally likely that a non-party witness would be subject to the subpoena power of a court in the District of Delaware as to the subpoena power of this Court.[8]  See Fed. R. Civ. P. 45(b)(2)(B).

Similarly, there is no evidence that the location of books and records weighs in favor of one forum or another, or that any of the pertinent records would be unavailable in either forum. See Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) ("the technological advances of recent years have significantly reduced the weight of this [books and records] factor in the balance of convenience analysis.") (internal citations omitted); Jumara, 55 F.3d at 879 (holding that the location of books and records should be considered only "to the extent that the files could not be produced in the alternative forum."). TransCore states that it "maintains important record [sic] at [its] main offices in Hummelstown, Pennsylvania related to financials and sales,"

---

[8]  TransCore asserts that handling the case in Pennsylvania "will reduce the cost of travel for TransCore, as well as TransCore's expense related to the travel of their attorneys." TransCore Mot to Enjoin at 8.  As attentive to the lawyers' interests – and the attendant impact upon their clients – as the Court wants to be, the convenience of TransCore's attorneys is not actually a factor to be considered in the venue transfer analysis.  See Solomon v. Continental American Life Ins. Co. 472 F.2d 1043, 1047 (3d Cir. 1973).  Moreover, there is evidence that the offices of TransCore in Hummelstown, Pennsylvania, are actually closer to the District Court in Delaware than they are to this Court.  See Han Decl. at ¶ 14, Ex. K.

TransCore Mot. To Enjoin at 8, but there is no suggestion that any of the pertinent records would be unavailable or burdensome to produce in either forum.

TransCore argues that practical considerations favor handling the case in Pennsylvania because the Delaware dockets are congested and the case might move more quickly if it proceeded in Pennsylvania. TransCore Mot. to Enjoin at 9. However, the federal case management statistics reflect that the time to trial in the District of Delaware is comparable to the time to trial in the Eastern District of Pennsylvania, and a United States District Court judge has already been assigned to the Delaware Action. See Han Decl. at ¶ 16, Ex. M. On balance, it does not appear that venue would be more convenient for the parties or witnesses in Pennsylvania than in Delaware (or, for that matter, that venue would be less convenient in Delaware than in Pennsylvania).

Moreover, it appears that discovery has not commenced in either the current action or the Delaware Action.[9] Accordingly, once this case is transferred to the District of Delaware, the Delaware district court will be well-positioned to set a consolidated schedule for carrying out discovery and other matters and address any discovery disputes that may arise. See Elan Suisse Ltd. v. Christ, No. 06-3901, 2006 U.S. Dist. LEXIS 93861, **15-18 (E.D. Pa. Dec. 29, 2006).[10]

---

[9]  Following the oral argument on September 24, 2009, the Court suggested that TransCore informally communicate with Mark IV to see if an exchange of information might facilitate the parties' mediation efforts. The next day, TransCore sent Mark IV a set of extensive, informal discovery requests, whose depth and breath far exceeded the Court's expectations. Mark IV did not respond to these discovery requests, and the Court did not order otherwise, it being apparent that limited discovery or an informal exchange of information would not facilitate the parties' mediation efforts.

[10]  There is at least one additional reason to transfer the instant action to the District of Delaware. Based on the parties' filings, it appears that the court in the District of Delaware can exercise personal jurisdiction over *all* of the parties involved in both actions, which  (cont. . . .)

14

Having analyzed the case under the first-filed rule, as well as the various <u>Jumara</u> factors

regarding § 1404(a), the Court determines that transfer to the District of Delaware is in the

interests of justice.

_____

(cont. . . .)
allow the Delaware court to fully resolve the issues at hand.  By contrast, it is *not* clear that this
Court can exercise personal jurisdiction over all of the TransCore-related Entities involved in the
Delaware Action, which might prevent this Court from fully resolving the issues at hand.
        TransCore argues that all of the TransCore-related Entities are subject to the specific
personal jurisdiction of this Court simply because the Accused Products were eventually sold in
Pennsylvania.  <u>See</u> Sept. 24, 2009 Oral Argument Transcript at 7-8.  The Court is not persuaded
that that is necessarily accurate.  Even if the Accused Products were sold eventually in
Pennsylvania, it does not necessarily follow that this Court can exercise specific personal
jurisdiction over all of the TransCore-related Entities in the Delaware Action.  The mere act of
placing products into the stream of commerce, to be sold eventually in Pennsylvania, is not
sufficient to establish specific personal jurisdiction in Pennsylvania.  <u>See</u> <u>Asahi Metal Indus. Co.
v. Superior Court</u>, 480 U.S. 102, 112 (1987) (plurality op.) (O'Connor J.).
        For specific personal jurisdiction to lie in this District, it must be shown that each one of
the TransCore-related Entities has claim-specific contacts with Pennsylvania.  It must also be
shown that the causes of action arise out of each Entity's activities in Pennsylvania, such that
each Entity "should reasonably anticipate being haled into court."  <u>World-Wide Volkswagen
Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  Here, one or more of the TransCore-related
Entities could have infringed the at-issue patents *outside* of Pennsylvania, perhaps by *making* or
*using* the Accused Products (rather than selling them).  <u>See</u> Sept. 24, 2009 Oral Argument
Transcript at 31-32.  In such a case, specific personal jurisdiction might not lie in Pennsylvania.
        At this juncture, it is by no means clear whether this Court could exercise specific
jurisdiction over *all* of the TransCore-related Entities, and this uncertainty weighs in favor of
transferring the case to the District of Delaware.  <u>See</u> <u>Kim v. Kim</u>, 324 F. Supp. 2d 628, 643
(E.D. Pa. 2004) (transferring case and noting that "practical considerations overwhelmingly favor
transfer.  Because of jurisdictional problems, the action cannot proceed as a whole in this Court.
A transfer . . . will permit resolution of this dispute in a single forum and, if the judge deems it
appropriate, in a single consolidated action.").  This uncertainty is not overcome by TransCore's
agreement that all of the TransCore-related Entities would be subject to personal jurisdiction in
this Court.  <u>See</u> <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343-44 (1960) (holding that a case may only be
transferred to a district where it "might have been brought" originally, and if the plaintiff does
not have the right to sue in a transferee district, "independently of the wishes of defendant, it is
not a district 'where it might have been brought,' and it is immaterial that the defendant
subsequently [makes himself subject, by consent, waiver of venue and personal jurisdiction
defenses or otherwise, to the jurisdiction of some other forum].");  <u>Shutte v. Armco Steel Corp.</u>
431 F.2d 22, 24 (3d Cir. 1970).

15

C.      Motion to Enjoin

As for TransCore's motion to enjoin Mark IV from proceeding with the Delaware Action,

given the foregoing analysis, the Court will not grant the motion.  In addition, the Court notes the

general judicial reluctance to enjoin a party from proceeding with a suit in another district or

state, in the absence of specific conditions that do not apply here.  In Cenergy Corporation v.

Bryson Oil & Gas P.L.C., 657 F. Supp. 867 (D. Nev. 1987), the court surveyed various district

court and circuit court decisions and set forth a useful framework for analyzing a request to

restrain proceedings in another federal district:

> First, the court issuing the restraining order or injunction must be the court in which the
> action is first filed.  That is, only the court which has initial jurisdiction over the parties
> and the subject matter has the power to enjoin subsequent lawsuits. In addition, the
> parties and the causes of action in the subsequent lawsuit must be identical to those in the
> initial suit for the injunction to issue.  Finally, the party seeking the injunction must ask
> the second court to stay its prosecution in view of the first action before injunctive relief
> is appropriate.  Only after the stay is sought and denied by the second court may a party
> then approach the first court for the injunction.

Cenergy Corporation, 657 F. Supp. at 870-71 (citations omitted).  This framework appears to

make good policy sense and embraces sensible practicalities, as well as promotes comity between

the various federal district courts.  See id. at 871.  See also Span-Eng Associates v. Weidner, 771

F.2d 464, 468 (10th Cir. 1985); Bergh v. Washington, 535 F.2d 505, 507 (9th Cir. 1976); O'Hare

International Bank v. Lambert, 459 F.2d 328, 331 (6th Cir. 1972).  Here, TransCore cannot show

that it has met any of the conditions set forth in Cenergy.  The motion to enjoin is denied.

**IV.     CONCLUSION**

For the reasons discussed above, the Court denies TransCore's motion, and grants in part

and denies in part Mark IV's motion.  This case will be transferred to the District of Delaware for

that court's consideration of possible coordination or consolidation with the related, earlier-filed

action.  An Order consistent with this Memorandum follows.


                                        BY THE COURT:


                                        S/Gene E.K. Pratter
                                        GENE E.K. PRATTER
                                        United States District Judge